No. 23,178.

C. M. WESCOTT, *Appellee*, v. A. W. BAILEY, *Appellant*.

SYLLABUS BY THE COURT.

OIL AND GAS LEASE—*Land Subdivided Into Forty-acre Units—Cancellation of Lease on Each Separate Unit.*  An oil and gas lease given for a maximum term of twenty years construed, and it is held that under its terms the leased land was subdivided into forty-acre units, rental to be paid on each unit unless the lessee had a producing well on such unit, and in case no rent was paid and there was no producing well on the unit, the lease on so much of the land was to become void.  There being no producing well on the land owned by the plaintiff and no rent having been paid, the court rightly cancelled the lease as to that unit although the maximum period of the lease on the whole tract had not yet expired.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed May 7, 1921.  Affirmed.

*C. W. Shinn,* of Neodesha, *G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellant.

*A. H. Ward,* of Neodesha, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action the cancellation of an oil and gas lease was adjudged and the defendant appeals.

The lease covered 509 acres and was executed by P. M. and Ida Wescott to B. E. LaDow, on February 27, 1904, and subse-

quently assigned to the defendant, A. W. Bailey. The lease stipulated that the lessee should "have the exclusive right for twenty years from this date to enter upon and operate for oil and gas on that certain tract of land," etc., describing it. It provided for the payment of consideration in the sum of $117.25, payable semi-annually, being a rental of fifty cents per acre, during the continuance of the lease. It was stipulated that the lessee should deliver to the lessor one-eighth of the oil produced on the premises or at the option of the lessor should pay $100 per year for each gas well of sufficient capacity to use, except one well which was then on the premises, for which the lessee was to pay fifty dollars per year. It contained the provision that if oil or gas is found in paying quantities in any well drilled, the privilege of operating should continue so long as oil or gas is so produced and when abandoned the grant should cease. It contained the further stipulation that the rental should be paid—

"During the continuance of this lease providing however that a producing well on any forty acres of land should stop the payment of rental on that 40 acres; said rental should be deposited to the credit of said P. M. Wescott in the Neodesha National Bank at Neodesha, Kansas, or if said bank shall discontinue business, then in any other bank in Neodesha or be paid to P. M. Wescott or his heirs or assignees; and if not paid when due, each forty acres on which there shall be no producing wells shall be released, and this lease shall become null and void as to such land. A failure to carry out any of the conditions herein contained shall also render this lease null and void."

The plaintiff purchased forty acres of this tract of land on May 15, 1918. Several years before the purchase a well had been drilled on the forty-acre tract, and eight other wells had been drilled on the entire farm. When plaintiff purchased the land defendant was pumping the well on this tract, but oil in paying quantities was not produced, and in November, 1918, the defendant recognized that the well was not a producer and he stated that he only got enough oil to color the water pumped from the well. In the seventeen months prior to the trial plaintiff never received any royalty for oil or gas nor was any rent paid to him. The plaintiff claimed that as there was no producing well on the tract the rent became due on the 9th day of December, 1918, for a period of six months, and no rent having been paid defendant had forfeited his rights in that part of the

Wescott v. Bailey.

leased land.  After this action was commenced and on June 7, 1919, the defendant tendered to plaintiff $10 as rent for the six-months period, but the plaintiff refused to accept the same.

The court found that the defendant had failed to comply with the conditions of the lease and ordered a cancellation as to the forty owned by the plaintiff.

Defendant contends that the lease was for a period of twenty years, that the drilling of one well on the whole tract was sufficient to preserve the lessee's right to every part of it, and that there could be no forfeiture because of the nonpayment of rent on the forty acres in question.  While the general limit of the lease was twenty years, it was provided that under certain circumstances the life of the lease might be shortened as to all or a part of the land.  To determine the intention of the parties and the effect of the lease, consideration must be given to all of its terms.  The parties specifically provided for the segregation of the land leased into units of forty acres, each unit to be treated separately and independently as to the rental to be paid by the lessee and also as to the forfeiture of such units in case of noncompliance with specified conditions.  After providing for the payment of rentals it was agreed that the bringing in of a producing well on a forty-acre tract would stop the payment of rentals upon that forty acres, and if no producing well was sunk and the rent on it was not paid when due, the rights of the defendant in that part of the leased land would be forfeited.  The evidence satisfactorily shows that there was no producing well on the land and that the rent was not paid when due, in fact no rent was paid to plaintiff during his ownership of the tract.  The only way the defendant could be relieved from the payment of rent was the sinking of a producing well upon each of the forty-acre tracts.  It was competent for the parties to make the subdivision of the leased land that was made and to provide for the cancellation of the lease as to each unit upon which there was no production and no payment of rent.  It appears that defendant had given a practical construction to this provision of the lease as he treated each forty acres of the tract as a unit and had released and cancelled all of the 509 acres except three forties upon which there were wells.

We are of the opinion that the proper construction was given to the lease by the trial court, and its judgment is affirmed.